UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALICIA R.,[1]                                      Case No. 2:22-cv-4475
    Plaintiff,                              Litkovitz, M.J.

    vs.

COMMISSIONER OF                      **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Alicia R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16) and the Commissioner's response (Doc. 20).

**I. Procedural Background**

Plaintiff protectively filed her application for SSI on September 3, 2020 alleging disability beginning September 1, 2020 due to degenerative disc disease (DDD); having a tumor removed from her pituitary; migraines; bipolar disorder; depression; a suicide attempt on August 12, 2020; the recent loss of a child; anxiety; a sleeping disorder; insomnia; and lung collapse. (Tr. 139, 308). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Valerie A. Bawolek on April 4, 2022. (Tr. 40-58). Plaintiff, a vocational expert (VE), and two medical experts (MEs) appeared telephonically and testified at the ALJ hearing. (*Id.*). On May

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

3, 2022, the ALJ issued a decision denying plaintiff's application. (Tr. 21-35). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 9, 2022. (Tr. 7-10).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

>    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

>    1. [Plaintiff] has not engaged in substantial gainful activity since September 3, 2020, the application date (20 CFR 416.971 *et seq.*).
>
>    2. [Plaintiff] has the following severe impairments: cervical and lumbar degenerative disc disease; migraine headaches; Chiari malformation; mood disorder variously diagnosed as major depressive disorder or schizoaffective disorder; posttraumatic stress disorder; and generalized anxiety disorder (20 CFR 416.920(c)).
>
>    3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
>    4. After careful consideration of the entire record, [the ALJ] finds that [plaintiff] has the residual functional capacity to perform a range of light work as defined in

>20 CFR 416.967(b) except never climb ladders, ropes, or scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] must avoid unprotected heights and other hazards. She can tolerate occasional exposure to temperature extremes and vibration. [Plaintiff] requires a work environment with no louder than a moderate noise level--- defined as office type. She is limited to simple repetitive tasks. [Plaintiff] requires a job with no public contact, no customer service, and only occasional contact with supervisors and coworkers. She requires a job without strict production quotas or a fast pace.
>
>5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]
>
>6. [Plaintiff] was born [in] . . . 1984 and was 36 years old, a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
>7. [Plaintiff] has a limited education (20 CFR 416.964).
>
>8. Transferability of job skills is not an issue because [plaintiff]'s past relevant work is unskilled (20 CFR 416.968).
>
>9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[3]
>
>10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since September 3, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 26-34).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff's past relevant work was as a cashier, an unskilled, light position. (Tr. 33, 54).
[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as machine feeder (33,000 jobs in the national economy), press feeder (32,000 jobs in the national economy), and mail sorter (69,000 jobs in the national economy). (Tr. 34, 55-56).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### E. Specific Errors

In plaintiff's first assignment of error, she argues that that ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence.[4] Plaintiff argues that the opinion of ME Gary Bennett, Ph.D., which she found persuasive, as well as "the other medical opinions of the record and the substantial evidence of the record all support a more

---

[4] Plaintiff's first assignment of error pertains only to the ALJ's mental RFC determination. Any argument related to the ALJ's physical RFC determination is deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors"), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

restrictive residual functional capacity." (Doc. 16 at PAGEID 912). Plaintiff argues that the RFC determination "fails to adequately address" plaintiff's limitations in her ability to "understand, concentrate, and perform at a consistent pace; deal with others; and remain on task for a workday or workweek. . . ." (*Id.* at PAGEID 914). In particular, plaintiff argues that the ALJ's hypothetical to the VE was "not adequate on the issue of moderate limitations of concentration, persistence, and pace. . . ." (*Id.* at PAGEID 915).

In response, the Commissioner argues that the ALJ's RFC determination is consistent with Dr. Bennett's opinion, which the ALJ found persuasive. The Commissioner argues that the ALJ properly credited Dr. Bennett's opinion and discounted the opinions of the consultative examiner and state agency psychological consultants.

For plaintiff's second assignment of error, she relies on the Social Security Administration Hearing, Appeals and Litigation Law Manual (HALLEX), which states:

> If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the ME for review before the ME testifies.

HALLEX § I-2-6-70(B). Plaintiff argues that the ALJ erred by allowing ME Gilberto Munoz, M.D., to testify and be released from the hearing prior to taking plaintiff's testimony.[5]

---

[5] While this section of plaintiff's brief sometimes refers to multiple MEs (*see, e.g.,* Doc. 16 at PAGEID 917 ("[T]he medical experts could not have had a clear and complete picture. . . .")), plaintiff largely refers to the ME in the singular, references only Dr. Munoz by name, and argues that plaintiff's testimony on her "*physical*" symptoms and conditions" could have impacted the ME's opinion. (*Id.* (emphasis added)). In addition, the ALJ hearing transcript reflects that Dr. Bennett heard plaintiff's testimony. (*See* Tr. 46). The Court therefore understands this assignment of error to concern the ALJ's hearing conduct only as related to Dr. Munoz, who opined on plaintiff's physical RFC.

In response, the Commissioner argues that Dr. Munoz reviewed the record in plaintiff's case, and plaintiff fails to point to any particular testimony that would have impacted Dr. Munoz's opinion. The Commissioner also effectively argues that plaintiff waived this issue—noting that plaintiff was represented by counsel, who did not object to the ALJ's release of Dr. Munoz or cross-examine Dr. Munoz.

1. RFC determination

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his case file. (*Id.*). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. § 416.920c(a).

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.946(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Id.* (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

The portion of the ALJ's RFC determination relevant to plaintiff's first assignment of error is the following: "[Plaintiff] is limited to simple repetitive tasks. [Plaintiff] requires a job with no public contact, no customer service, and only occasional contact with supervisors and coworkers. She requires a job without strict production quotas or a fast pace." (Tr. 29). The ALJ based her RFC on Dr. Bennett's opinion, which she found persuasive. Dr. Bennett heard plaintiff's testimony, reviewed the record, and concluded that she had moderate limitations in all of the paragraph B criteria for mental impairments[6]—which included plaintiff's ability to concentrate, persist, or maintain pace. (Tr. 52). Dr. Bennett acknowledged plaintiff's diagnoses of a mood disorder, PTSD, and generalized anxiety disorder—as well as the fact that plaintiff's anxiety might affect her concentration. (*Id.*). At the same time, however, Dr. Bennett noted that plaintiff's previous substance abuse issues did not appear to have persisted and that there were no "notable problems" evident from the consultative examination. (*Id.*). Following these observations, Dr. Bennett opined that plaintiff should be limited to "simple, repetitive tasks, no contact with the public, occasional with co-workers and supervisors[,] . . . no strict production quotas or fast paced work[,]" and no customer service work. (Tr. 53).

When the ALJ questioned the VE, he took directly from Dr. Bennett's testimony that the hypothetical person was "limited to simple, repetitive tasks, requires a job with no contact with

---

[6] These criteria include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E).

8

the public, no customer service and only occasional contact with co-workers or supervisors[,]" and "requires the job without strict production quotas or a fast pace." (Tr. 53). The ALJ ultimately adopted this as plaintiff's RFC. (*See* Tr. 29).

While the Commissioner's response to this assignment of error focuses on the ALJ's assessment of the medical opinions of record, plaintiff has not articulated such a challenge. Rather, plaintiff argues that the hypothetical question the ALJ posed to the VE did not adequately convey the moderate limitations in concentration, persistence, or pace endorsed in Dr. Bennett's persuasive opinion. Plaintiff points to various records that consistently reflect, *inter alia*, her mood disorder, PTSD, anxiety, and associated concentration issues. (*See* Doc. 16 at PAGEID 915). Plaintiff then argues that these records "support a finding that [she] may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." (*Id.*).

The hypothetical question posed by the ALJ, however, *expressly included* limitations that plaintiff could not have "strict production quotas or a fast pace" and did not merely limit plaintiff to simple, routine, and unskilled jobs. (Doc. 53). In addition, *Keyser v. Comm'r of Soc. Sec.*, No. 03-60078, 2004 U.S. Dist. LEXIS 28840 (E.D. Mich. Sept. 2, 2004)—the case that plaintiff cites for the proposition that the ALJ's RFC determination did not adequately account for her moderate limitations in concentration, persistence, or pace—is distinguishable.[7] In *Keyser*, the court concluded that an RFC limiting the plaintiff to "unskilled work with limited stress" was not

---

[7] Plaintiff also includes a "*c.f.*" citation to *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). At the page number referenced, however, the Sixth Circuit explains why hypothetical VE questions need not include a list of a claimant's medical conditions. *Id.* Plaintiff offers no explanatory parenthetical or discussion, and the Court fails to see its relevance to this particular issue.

9

based on substantial evidence because it addressed only the intensity of the plaintiff's concentration limitations but *did not* address their frequency. 2004 U.S. Dist. LEXIS 28840, at *8. Here, however, Dr. Bennett did not opine that plaintiff's concentration limitations would frequently interfere with her work:

> [Plaintiff's counsel]: . . . [D]o you believe it would be reasonable for the [RCF] [to] include additional off-task time or something to account for the hallucinations?
>
> [Dr. Bennett]: . . . I could see that, that would be reasonable. I don't have much in the records that addresses that. And, the fact that she's not being prescribed anti-psychotic medication . . . would lead me to think that it's not really interfering at that significant of a level. But it's certainly possible.

(Tr. 52-53). General speculation notwithstanding, Dr. Bennett's testimony does not reflect any endorsement of frequency-related concentration limitations.

Plaintiff does not otherwise articulate specific error in the ALJ's RFC determination and instead makes general allegations that the ALJ did not properly weigh the evidence. (*See* Doc. 16 at PAGEID 912 ("Dr. Bennett's testimony [and] the other medical opinions of the record and the substantial evidence of the record all support a more restrictive [RFC]."); PAGEID 915 (listing plaintiff's impairments and symptoms and asserting that they support a more restrictive RFC)). But plaintiff does not point to particular evidence that the ALJ did not consider and which compels a different result. As such, plaintiff essentially asks this Court to re-weigh the evidence. That is the province of the ALJ. *Molly M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-274, 2022 WL 336412, at *5 (S.D. Ohio Feb. 4, 2022) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)). *See also O'Brien*, 819 F. App'x at 416 ("[Plaintiff] bears the

burden of demonstrating an RFC more restrictive than that determined by the ALJ") (citation omitted).

For the foregoing reasons, the ALJ's RFC determination is supported by substantial evidence. Plaintiff's first assignment of error is therefore overruled.

2. Hearing procedure

The HALLEX "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I–1–0–1). While "HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011) (citing *Bowie*, 539 F.3d at 399); *see also Lawrence v. Colvin*, Civ. A. No. 3:13-032, 2014 WL 640990 at *4 (E.D. Ky. Feb. 18, 2014) ("the HALLEX procedures are not binding on this Court, and do not create procedural due process rights") (citing *Dukes*, 2011 WL 4374557, at *9); *Alilovic v. Astrue*, Case No. 1:12-cv-323, 2012 WL 5611077, at *7 (N.D. Ohio Nov. 15, 2012) (The HALLEX is an "'internal guidance tool' for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law."). "[D]istrict courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures." *Creech v. Comm'r of Soc. Sec.*, 581 F. App'x 519, 521 (6th Cir. 2014).

As such, any alleged failure by the ALJ to follow the HALLEX proffered rules does not constitute reversible error in itself. *See Bowie*, 539 F.3d at 399. Even if the ALJ failed to comply with the HALLEX by releasing Dr. Munoz prior to plaintiff's testimony, plaintiff fails to establish that this prejudiced her claim such that a reversal and remand of this matter is warranted. *See Creech*, 581 F. App'x at 521. At most, plaintiff speculates that Dr. Munoz "could not have had a clear and complete picture of [plaintiff's] impairments without her testimony[,]" and plaintiff's testimony "could have shed additional light on how her physical symptoms and conditions had changed and worsened. . . ." (Doc. 16 at PAGEID 917). But plaintiff fails to discuss Dr. Munoz's opinion in her statement of specific errors at all—let alone identify any particular testimony, how such testimony would have influenced Dr. Munoz's opinion, and how that opinion would have impacted the ALJ's decision. This assignment of error is overruled.

**III. Conclusion**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 16) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:  10/9/2023

Karen L. Litkovitz
Chief United States Magistrate Judge